UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10779-RGS

FOREST CITY ASSUMED LOANS I HOLDINGS LLC
AND FOREST CITY PROPERTIES, LLC

v.

EC HOUSING INVESTMENTS

MEMORANDUM AND ORDER ON
PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS

October 1, 2020

STEARNS, D.J.

In 1989, plaintiffs Forest City Assumed Loans I Holdings LLC, and
Forest City Properties, LLC, through a joint venture, Kennedy Lofts
Associates (KLA), formed a limited partnership with defendant Edison
Capital Housing Investments (Edison).   This action seeks to determine the
ownership interests and rights of the partners, which turns on a dispute over
the instrument that governs the partnership.   The Amended Complaint sets
out claims against Edison for breach of contract (Count I) and declaratory
judgment (Count II).   In response, Edison asserts four counterclaims
against KLA and counterclaim defendant Forest City Realty Trust, Inc. (FC
Trust):   breach of contract (Count I); breach of fiduciary duty (Count II);

breach of the covenant of good faith and fair dealing (Count III); and violation of the Massachusetts Fair Business Practices Act, Mass. Gen. Laws ch. 93A, § 11 (Count IV).[1]   Before the court is KLA's and FC Trust's Motion for Judgment on the Pleadings, or, in the alternative, for phased discovery.

## BACKGROUND

KLA and Edison formed the Kennedy Lofts Associates Limited Partnership in 1989.   Am. Compl. (Dkt. # 11) ¶ 13.   KLA is the general partner and Edison is a limited partner; the partnership holds a long-term leasehold interest in and operates a Cambridge, Massachusetts apartment complex.   *Id.* ¶¶ 1, 13-14.

In late 2019, KLA and Edison began discussing KLA's procurement of a loan on the partnership's behalf in order to refinance its debt.   Countercls. (Dkt. # 12) ¶ 14.   On November 15, 2019, KLA representative Joe Loncar emailed Edison's Bart McEntire a "waterfall" of calculations forecasting the cash distributions of an expected loan in the amount of $44.4 million.   *Id.* ¶ 21.   McEntire responded that Edison was on board and asked KLA to

---

[1] Edison stipulates to dismissal without prejudice of Count IV of its counterclaims, *see* Opp'n to Mot. for J. on the Pleadings (Opp'n) (Dkt # 26) at 4 n.1, in apparent recognition that the action is not viable.   *See Zimmerman v. Bogoff*, 402 Mass. 650, 662 (1988).

"[p]lease proceed."   *Id.* ¶ 23.   The "waterfall" distributions were tentatively allocated under the terms of an Amended and Restated Agreement of Limited Partnership (LPA), dated December 22, 1989.   Under the 1989 LPA, Edison held the majority ownership interest in the partnership.   Am. Compl. ¶ 26; Mot. for J. on the Pleadings (Dkt. # 24) at 1.

In February of 2020, KLA informed Edison that it had "discovered" a First Amendment to the LPA (Amendment), dated October 22, 1999, that substantially altered the ownership interests of the parties.   Countercls. ¶¶ 26-29.   Under the terms of the Amendment, KLA, in exchange for a $7 million cash infusion, was granted a 99 percent ownership interest in the partnership (as of December 21, 2005) and the right to buyout Edison's remaining 1 percent interest.   Am. Compl. ¶¶ 15-17.   On March 23, 2020, KLA gave Edison 120 days' notice of its intention to exercise the buyout right. *Id.* ¶¶ 19-20; Countercls. ¶ 35.   Edison objected to the validity of the Amendment and refused to honor the buyout agreement.   Edison also insisted that the parties had already come to a new agreement regarding the distribution of the $44.4 million loan.   Am. Compl. ¶¶ 21-24; 30-31; Countercls. ¶¶ 23-24, 52-56.

3

## DISCUSSION

Rule 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," so long as the motion does not delay the trial.   Fed. R. Civ. P. 12(c).   However, "a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point."   *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).   "Because [a Rule 12(c)] motion, like a motion to dismiss a complaint under Rule 12(b)(6), involves some assessment of the merits, we view the facts contained in the pleadings in the light most favorable to the party opposing the motion . . . and draw all reasonable inferences in [that party's] favor."   *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007).

Contrary to Edison's argument that a "Rule 12(c) motion is supposed to be confined to the four corners of the pleadings," Opp'n at 1; *see also id.* at 4-6, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein."   *R.G. Fin.*, 446 F.3d at 182.   "In reviewing a motion under Rule 12(c) . . . [a court] may consider documents the authenticity of which are not disputed, documents central to the plaintiff's claim, and documents sufficiently referred to in the

4

complaint." *Curran*, 509 F.3d at 44, quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).   These documents need not be formally appended to the pleadings to enable a court to consider them.   *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (affirming district court's consideration of an agreement discussed in but not attached to the plaintiff's complaint).   But "even if a document is 'central to the plaintiff's claim,' its authenticity must also be accepted by both parties in order for a court to consider it."   *Pouliot v. Town of Fairfield*, 184 F. Supp. 2d 38, 47 (D. Me. 2002), citing *Beddall*, 137 F.3d at 17.

The court is confronted with two distinct, although ultimately related, issues.   The first involves the refinancing of the partnership.   Edison argues by way of its counterclaims that the email exchange between Loncar and McEntire over the distribution of the loan proceeds amounted to a contractual undertaking separate and apart from the underlying joint venture agreement.   KLA argues that no separate contract was ever formed.

Under Massachusetts law, "[a]ll the essential terms of a contract must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined."   *Cygan v. Megathlin*, 326 Mass. 732, 733-734 (1951).   "It is

axiomatic that to create an enforceable contract, there must be an agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000).

Edison argues that it has sufficiently alleged an offer and acceptance of a contract with KLA to refinance the partnership, including the loan amount and the breakdown of the parties' cash distributions.   Opp'n at 11-12.   KLA responds that there were "no agreed-upon details" and that the parties were merely discussing a "hypothetical loan of fluctuating amount."   Mot. at 14. To the extent the parties had entered discussions over a refinancing of the venture, KLA argues that "the parties were not forming a new contract, but rather performing under a preexisting one."   *Id.* at 13; *see also id.* at 2; Reply (Dkt # 29) at 3-4.

"Ordinarily the question whether a contract has been made is one of fact.   If the evidence consists only of writings, or is uncontradicted, the question is for the court."   *David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc.*, 8 Mass. App. Ct. 237, 239 (1979), quoting *Bresky v. Rosenberg*, 256 Mass. 66, 75 (1926).   The court need not reach Edison's contract formation arguments because the alleged contract fails as a matter

of law for a separate reason:    lack of consideration.    Even if there had been an agreement on the essential terms of a refinancing in the parties' November 2019 email exchange, the discussions were simply an extension of parties' ongoing obligations to maintain the business of the partnership. Edison notes in its opposition that because it had the right to withhold its consent to the refinancing, *see* LPA § 5.2(b) ("The General Partner shall furthermore have no authority, without the Consent of the Limited Partner, to . . . . (xiii) incur Partnership debt in excess of $200,000 . . . ."), its request to "[p]lease proceed" amounted to binding consideration for the new contract.

However, there is nothing in the existing record and nothing alleged to suggest that Edison's consent was a matter of negotiation or that the distribution of the proceeds (as proposed) was contingent on its consent being granted.    Ultimately, the court agrees that the parties were acting at all times under the terms of their existing agreement, or what they then believed to be the existing agreement – and were not seeking to form a new one.[2]    "[I]f the undertaking by one party is simply to perform the whole or

---

[2] The authority to which Edison cites is not instructive.    In *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 202 (1st Cir. 2004), there was no preexisting agreement pursuant to which the parties were already performing.    Edison's argument that its consent constituted consideration

part of what he promised in the original contract, it will not support a promise by the other party to perform what he previously agreed and something more." *Beal Bank S.S.B. v. Krock*, 187 F.3d 621 (1st Cir. 1998), quoting *De Blois v. Boylston & Tremont Corp.*, 281 Mass. 498, 509 (1933); *see also cf. Fronk v. Fowler*, 456 Mass. 317, 330 (2010) (finding limited partner's claim that would "transform a permissive grant of authority into a contractual requirement" to be frivolous).   Because Edison's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing depend on the existence of a newly negotiated contract involving the refinancing of the partnership, the court allows the motion with respect to these two counterclaims.

The second issue – which cannot be resolved on this record – is the validity of the alleged 1999 Amendment reallocating ownership interests in the partnership and granting KLA the option to acquire Edison's interest in the venture.   *See* Ex. 2 (Dkt. # 23-3).   KLA argues that Edison breached the Amendment by refusing to transfer its remaining 1 percent ownership interest after KLA exercised the buyout right.   Am. Compl. ¶¶ 37-44.

---

because Edison was "privileged to retain" it fails to take into account the preexisting terms of the LPA.

Separately, Edison alleges that KLA and FC Trust[3] breached their fiduciary duties concerning the buyout right by inducing Edison to believe it would receive proceeds totaling over $13 million from refinancing the partnership, failing to inform Edison of the buyout option, failing to inform Edison of its desire to exercise the option in lieu of refinancing, and exercising the option during "the depressed economic conditions created by the COVID-19

---

[3] Edison's fiduciary duty claim as alleged against FC Trust fails.   In response to KLA's argument that "FC Trust is simply an indirect parent company" not responsible for the acts of KLA, Mot. at 22, Edison states that FC Trust "owns and controls" KLA, including a 3 percent legal interest in the partnership property, and that KLA employees represented themselves as officers of Brookfield Properties, an affiliate that owned all outstanding stock of FC Trust.   Opp'n at 21.

Edison's allegations are insufficient to pierce KLA's corporate veil. "Only in rare instances, in order to prevent gross inequity, will a Massachusetts court look beyond the corporate form."   *Spaneas v. Travelers Indem. Co.*, 423 Mass. 352, 354 (1996).   The usual Massachusetts veil-piercing test requires more than a parental exercise of "some form of pervasive control" over the subsidiary. *Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 767 (2008).   Rather, there must be a showing of "some fraudulent or injurious consequence of the intercorporate relationship" or "confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities."   *Id.* (quotation omitted).

Because "[c]ustomary incidents of a parent-subsidiary relationship" such as ownership and "common personnel" are insufficient to overcome corporate separateness, *In re Lupron Mktg. and Sales Pracs. Litig.*, 245 F. Supp. 2d 280, 292 (D. Mass. 2003), Edison's breach of fiduciary duty counterclaim against FC Trust fails.   The court will allow the motion with respect to Count III as to FC Trust.

pandemic."   Countercls. ¶ 53.

While as a rule, general partners owe the same duty of utmost good faith and loyalty to their limited partners as do stockholders in a close corporation to one another, *Reeve v. Folly Hill Ltd. P'ship*, 36 Mass. App. Ct. 90, 95 (1994), where a partnership agreement authorizes the actions of a general partner, the obligations of the partners are governed by reference to contract law and not by fiduciary principles.   *Fronk v. Fowler*, 71 Mass. App. Ct. 502, 507 (2008).   In other words, if the Amendment validly conferred the right on KLA to exercise the buyout, it had the right to do so regardless of any fiduciary duty it may have owed to Edison.

Though the Amendment is "central to" these claims, *Curran*, 509 F.3d at 44, quoting *Watterson*, 987 F.2d at 1, the court cannot give it conclusive consideration if Edison contests its authenticity.   *See, e.g.*, *Thevenin v. M&T Bank Corp.*, 2020 WL 3453142, at *3 (D. Mass. June 24, 2020); *Oliverio v. Allied Steel Bldgs., Inc.*, 2016 WL 1369331, at *3 (D. Mass. Apr. 6, 2016).   Edison states that it lacks "sufficient knowledge or information to form a belief as to the truth of the allegations . . . concerning a purported 'First LPA Amendment.'"   Answer ¶¶ 28, 34-35, 37, 46-47, 48; *see also id.* ¶ 53; Opp'n at 22-24.   Typically, "[t]his bare assertion, without more, is not

10

sufficient to challenge the authenticity of [an agreement]" that was "dated and signed by both [parties]." *Rail World Locomotive Leasing, LLC v. Massachusetts Bay Transp. Auth.*, 2017 WL 1902147, at *2 (D. Mass. May 9, 2017).   However, KLA's offer of a declaration of an attorney who claims to have collected signatures for the Amendment in 1999, *see* Mount Decl. (Dkt. # 23) ¶ 4, does not conclusively refute Edison's argument that the parties for years "acted as if the First LPA Amendment did not exist," Opp'n at 23, thereby supporting the probability that it did not exist or was not ultimately adopted by the parties

To ensure fairness to Edison and to settle the dispute with finality, the court will provisionally deny KLA's motion for judgment on the pleadings as to Counts I and II of the Amended Complaint and as to Count II of the counterclaims, and will allow KLA's request for limited discovery followed by summary judgment briefing.   KLA and Edison will have 90 days from the date of this Order (until December 30, 2020) to take discovery limited to the validity and discovery of the First LPA Amendment and KLA's exercise of its buyout right.   At the conclusion of that discovery period, KLA will have twenty-one (21) days to file a motion for summary judgment (until January 20, 2021), should it so elect.

ORDER

For the foregoing reasons, the motion is <u>GRANTED</u> in part and <u>DENIED</u> in part.    The court allows KLA's motion on Counts I, III, and IV of the counterclaims and on Count II only as it applies to FC Trust.    The court denies KLA's motion without prejudice on Counts I and II of its claims and on Count II of Edison's counterclaims as it applies to KLA.    The court orders limited discovery, after which the parties may file a motion for summary judgment.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE